IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHN ROBERTS DUKES, #324544, | ) Civil Action No. 3:08-505-PMD-JRM |
| Plaintiff, | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| DAVID STONE, SHERIFF OF PICKENS COUNTY; | ) |
| LT. CHAD BROOKS, PICKENS COUNTY SHERIFF'S DEPUTY, | ) |
| Defendants, | ) |

Plaintiff filed this action on February 13, 2008.[1]  Plaintiff is currently an inmate at the Evans Correctional Institution of the South Carolina Department of Corrections.  Defendants are David Stone ("Stone") the Sheriff of the Pickens County Sheriff's Office ("PCSO") and Lt. Chad Brooks ("Brooks"), a deputy sheriff of the PCSO.  On September 26, 2008, Defendants filed a motion for summary judgment.  Because Plaintiff is proceeding pro se, he was advised on September 29, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motions for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on November 3, 2008.

## DISCUSSION

Plaintiff alleges that on February 23, 2007, Defendants kicked down the door of his residence without warning and without presenting a search or arrest warrant.  He claims that Defendants

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC.  Because these are dispositive motions, this report and recommendation is entered for review by the court.

confiscated items from his residence.[2] Plaintiff also alleges that Defendants caused approximately $10,000 damage to his mobile home with an axe and other tools. Additionally, he claims that his friends and family attempted to pick up his property from the Sheriff, but they were told that although Defendants had no authorization to confiscate these items they had already disbursed some of the items for personal use and would use the remainder for personal use.[3]

On June 5, 2008, Plaintiff filed objections to Defendants' answer and his own motion for summary judgment. Complaint at 4. Plaintiff requests the return of his property and $100,000 in damages. Id. at 5. Defendants contend that they are entitled to summary judgment because:

---

[2] Plaintiff claims that these items are:
(1) one safe (2) 18(eighteen) 14 kt. Gold neckla[c]es (3) 12 gold bracelets (4) a Kennedy fifty cents coin collection ($150.00 value) (5) silver dollar coin collection ($50.00 value) (6) 2 camera[]s (7) 3 color TV[s] (8) (one pair) night vision binoculars (9) 1 scale (10) 22,000.00 in cash (11) 6 watches (Elgin, Timex) (12) 2 rifles (13) quarter coin collection ($130.00 value) (14) $7,000.00 (seven thousand) dollars in cash located in trunk of car parked in yard.
Complaint at 3.

[3] It is unclear whether Plaintiff is also asserting a claim concerning racially inappropriate comments allegedly made by Defendants. Complaint at 4. Even if the alleged racially derogatory conduct occurred, such undeniably deplorable and unprofessional behavior does not by itself rise to the level of a constitutional violation. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987); Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999). Defamatory statements alone do not state a cognizable claim under 42 U.S.C. § 1983. Paul v. Davis, 424 U.S. 693 (1976).
   Additionally, although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated."). Plaintiff has not produced any evidence that his race played any part in his arrest. See Thomas v. Kincaid, No. 03-941-AM, 2004 WL 3321472 (E.D. Va. June 30, 2004)(finding that Caucasian Trooper's statement, "Come here you piece of shit," to African-American defendant was insufficient to support a claim of racial discrimination); Felton v. Chupik, No. Civ.A. 00-CV-1889, 2002 WL 32344335 (E.D.Va. Aug. 21, 2002) (finding that the comment, "I think you broke that nigger's neck," was insufficient to support a claim of racial discrimination against a police officer).

(1) Sheriff Stone is entitled to Eleventh Amendment immunity; (2) Plaintiff has no claim for deprivation of property without due process of law; (3) Plaintiff's claim is an attack on the existing state court Order of Forfeiture; and (4) these Defendants are not liable for the alleged property damage to Plaintiff's residence.

## FACTS[4]

On September 8, 2006, agents of the PCSO executed a search warrant at Plaintiff's residence. After approaching the residence, knocking on the door, announcing their presence, and receiving no response, the agents forced entry into the residence. Plaintiff was arrested on charges of Sale of Crack Cocaine (3 counts) and Possession of Crack Cocaine with Intent to Distribute. He was released on bond on September 10, 2006. Brooks Aff., Para. 3 and Ex. A (incident report, search warrant and return). Plaintiff executed a Consent Order of Forfeiture as to the items seized as a result of his September 8, 2006 arrest and seizure of property. Brooks Aff., Para. 5 and Ex. B.

On September 28, 2006, agents of the PCSO, the Easley Police Department, and the South Carolina Law Enforcement Division ("SLED") executed a search warrant at Plaintiff's residence. The warrant was based upon a supervised purchase of crack cocaine from Plaintiff following his release on bond on the previous charges. Plaintiff was arrested on charges of Sale of Crack Cocaine and Possession of Crack Cocaine with Intent to Distribute. After initially being denied, bond was later granted and Plaintiff was released from detention. Property seized on September 28, 2006 was

---

[4]Defendants have provided these facts in their motion for summary judgment and in Brooks' affidavit. They have provided supporting documentation including incident reports, forfeiture documents, search warrants, and property reports. In his memorandum in opposition to summary judgment, Plaintiff does not appear to dispute these facts, but instead argues that the forfeiture process was flawed because he did not properly receive notice of the forfeiture actions.

subsequently forfeited pursuant to an Order of Forfeiture dated December 13, 2007. Brooks Aff., Paras. 6 and Exs. C and D.

On February 22, 2007, agents of the PCSO supervised a controlled purchase of crack cocaine from Plaintiff at his residence. On February 23, 2007, a search warrant was executed at Plaintiff's residence by agents of the PCSO, the Easley Police Department, and SLED. A SLED agent entered Plaintiff's residence with consent. Sheriff Stone was not present. Plaintiff was arrested on February 23, 2007, on charges of Sale of Crack Cocaine and Possession of a Controlled Substance. Bond was denied. Property was seized on February 23, 2007, and subsequently forfeited by Order of Forfeiture dated February 4, 2008. On December 13, 2007, Plaintiff pled guilty to multiple drug charges. He was sentenced to ten years imprisonment. See Brooks Aff., Paras. 9-11, Exs. E and F.[5]

1.     Arrest/Search of Home

Plaintiff appears to allege that his constitutional rights were violated because he was arrested and his home was searched without a warrant. Defendants contend that the entry into Plaintiff's home was legal as the entry was conducted pursuant to a valid search warrant to enter the premises and Plaintiff has not contested the existence of probable cause.

Defendants have provided copies of the search warrants for the three searches of Plaintiff's home (see Brooks Aff. Exs. A, C, and E) and Plaintiff has not presented anything to dispute that his home was searched pursuant to valid search warrants. Thus, to the extent that Plaintiff is attempting

---

[5]In his motion for summary judgment, Plaintiff appears to argue that the consent forfeiture was a fraudulent document because it was generated in 2006 and the incident of arrest, search, and seizure did not occur until February 23, 2007. As shown by the documents submitted by Defendants, however, Plaintiff was arrested and his home was searched on two occasions prior to the February 23, 2007 arrest and seizure. Plaintiff also appears to be confused as which items were seized on which dates.

4

to assert that his constitutional rights were violated because his home was searched without a warrant, his claim fails. Further, to the extent that Plaintiff is attempting to attack his criminal convictions from his arrest on February 23, 2007, his claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994),[6] as he has not shown that his conviction or sentence were invalidated.

2.  Property Claims

Plaintiff alleges that he was denied the seized property without due process. He also alleges that damage was done to his mobile home during the entry to effectuate the search warrant on February 23, 2007. Defendants contend that there is no evidence that Defendants actually deprived Plaintiff of any property other than that forfeited by Order of the State Court; Plaintiff has presented no evidence that these Defendants actually took the property; the removal of property was lawful pursuant to the search warrant and the consent forms signed by Plaintiff; and if there was some unauthorized intentional removal of property from the premises, no due process claim arises unless

---

[6] In Heck, the Supreme Court determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based. The court held that:
> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 487.

5

or until the state fails or refuses to provide a suitable post-deprivation remedy. Defendants contend that Plaintiff has confused the different entries as no dynamic entry was used on February 23, 2007,[7] Defendants are not liable for the damages, the initial entry was not conducted by either of the Defendants, and there is no supervisory liability.

In the case of an unauthorized intentional property deprivation, no due process claim arises unless or until the state fails or refuses to provide a suitable post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984). The Fourth Circuit has held that a district court should deny relief under section 1983 if state law provides a viable remedy for personal property loss, even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of the state. Yates v. Jamison, 782 F.2d 1182, 1183-84 (4th Cir.1986). It has been held that claims related to personal property are cognizable under South Carolina state law. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir.1986). Here, even if Plaintiff has alleged an unauthorized intentional property deprivation, he fails to show a constitutional violation because he has a meaningful post-deprivation for his alleged loss under South Carolina law.

3.      Challenge to State Court Forfeiture Actions

Defendants contend that Plaintiff's claim is an attack on the existing state court Order of Forfeiture, which is barred by the Rooker-Feldman doctrine.[8] To the extent that Plaintiff is challenging the results of the State forfeiture actions, this court lacks jurisdiction over his claims

---

[7]Defendants contend that even if dynamic entry was used it would have been justified under the circumstances as Plaintiff was a known drug dealer, he was known to have video monitoring of his premises, and he was known to guns inside his home (see Brooks Aff., Exs. A, C, and D).

[8]See Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983); see also 28 U.S.C. § 1257(a).

6

under the Rooker-Feldman doctrine. Where a plaintiff seeks review and reversal of a state court judgment in a federal district court, the claim is barred by the Rooker-Feldman doctrine; only the United States Supreme Court may review state-court decisions. See Davani v. Virginia Dep't of Transp., 434 F.3d 712, 719 (4th Cir.2006) (explaining how the expansive interpretation of the Rooker-Feldman doctrine was limited by Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)).

    4.    Immunity

Defendant Stone contends that he is entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh

Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.

In Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd mem., 878 F.2d 379 (4th Cir. 1989)[Table], the court addressed whether South Carolina sheriffs were state or county officials. The court applied South Carolina common law principles of the master and servant relationship and concluded that sheriffs are state officials. Id. at 954-955. The Fourth Circuit concluded, in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), that the Greenville County sheriff, in his capacity as a state official, was immune from suit for monetary damages under § 1983. Id. at 1332. Further, in Gulledge, the district court concluded that deputy sheriffs are agents of the sheriff and therefore under state, not county, control. Gulledge, supra; see also Heath v. Aiken County, 368 S.E.2d 904 (S.C. 1988). In Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992), the South Carolina Supreme Court cited Gulledge with approval and specifically held that South Carolina sheriffs and their deputies are state officials for § 1983 purposes. Defendant Stone is the Sheriff of the PCSO. Thus, Defendant Stone is entitled to Eleventh Amendment immunity from damages in his official capacity.

Defendants contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

8

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 27) be **granted** and that Plaintiff's motion for summary judgment (Doc. 17) be **denied**.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

December 9, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).